UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

VICKIE S. RICHARDSON                                    CIVIL ACTION

VERSUS                                                 NO. 14-1749

CAROLYN W. COLVIN, ACTING                              SECTION "F" (2)
COMMISSIONER OF SOCIAL SECURITY

## FINDINGS AND RECOMMENDATION

Plaintiff, Vickie S. Richardson, seeks judicial review pursuant to Section 405(g)

of the Social Security Act (the "Act") of the final decision of the Commissioner of the

Social Security Administration ("Commissioner"), denying plaintiff's claim for disability

insurance benefits ("DIB") under Title II of the Act.  42 U.S.C. § 423.  This matter was

referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local

Rule 73.2(B).

I.     PROCEDURAL HISTORY

Richardson filed her application for DIB on March 4, 2012, alleging disability

beginning April 27, 2011, due to cervical stenosis,[1] cervical spondylosis,[2] neck and low

---

[1] Stenosis is "a narrowing or constriction of the diameter of a bodily passage or orifice." MedlinePlus Medical Dictionary, http://www.merriam-webster.com/medlineplus/stenosis (Merriam-Webster, Inc. 2015) (visited Apr. 30, 2015).

[2] Spondylosis is "[a]nkylosis of the vertebra; often applied nonspecifically to any lesion of the spine of a degenerative nature." Stedmans Medical Dictionary (on Westlaw at STEDMANS 840410). Ankylosis is "[s]tiffening or fixation of a joint as the result of a disease process, with fibrous or bony union across the joint." Id. at STEDMANS 23900.

back pain, lumbar stenosis, and C5 C6 disc osteophyte[3] complex.  (Tr. 148-52, 167).

After her claims were denied at the agency level, she requested a hearing before an

Administrative Law Judge (ALJ), which was held on March 20, 2013.  (Tr. 31-62).  The

ALJ issued a decision denying the application on March 28, 2013.  (Tr. 12-26).  After the

Appeals Council denied review on June 2, 2014, the ALJ's decision became the

Commissioner's final decision for purposes of this court's review.  (Tr. 1-5).

Plaintiff filed a timely memorandum in support of her appeal.  Record Doc.

No. 13.  Defendant filed a timely reply memorandum.  Record Doc. No. 16.

II.   STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.   The ALJ failed to analyze the opinions of Richardson's treating
neurosurgeon based on the factors set forth in 20 C.F.R. § 404.1527, as
required by Newton v. Apfel, 209 F.3d 448 (5th Cir. 2000).

B.   The ALJ's error in failing to evaluate properly the treating neurosurgeon's
opinions is not harmless because his opinions are reasonably supported by
the medical evidence.

III.   ALJ'S FINDINGS RELEVANT TO ISSUE ON APPEAL

1.   Plaintiff has a severe impairment consisting of degenerative disc disease of
the lumbar and cervical spine.

2.   She has the residual functional capacity to perform sedentary work, with
the additional limitations that she may lift/carry 10 pounds occasionally;
walk/stand for two hours out of eight, but stand for just 15 minutes at a

_____

[3]An osteophyte is "a pathological bony outgrowth."  MedlinePlus Medical Dictionary,
http://www.merriam-webster.com/medlineplus/osteophyte (visited Apr. 30, 2015).

time and walk 1/4 mile at a time; sit for six hours out of eight, but sit for just 30 minutes at a time and then has to be able to reposition in her chair or stand for up to a minute; occasional climbing of ramps/stairs; no climbing ladders/ropes/scaffolds; frequent balancing; occasional stooping, kneeling, crouching and crawling; no overhead work bilaterally with upper extremities; avoid concentrated exposure to vibration and extreme cold; avoid even moderate exposure to hazards; occasional rotation of neck but no problems with flexion or extension; and occasional gross manipulation with right, dominant extremity.

3. Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

4. Richardson cannot perform her past relevant work as a legal secretary.

5. Plaintiff was 47 years old on the alleged disability onset date and has at least a high school education.

6. Considering her age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform, including information clerk.

7. Richardson has not been under a disability from April 27, 2011 through the date of the ALJ's decision.

(Tr. 17-18, 23-26).

IV. ANALYSIS

A. Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate

legal standards in evaluating the evidence.  Richard ex rel. Z.N.F. v. Astrue, 480 F. App'x 773, 776 (5th Cir. 2012) (citing Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005)); Stringer v. Astrue, 465 F. App'x 361, 363 (5th Cir. 2012) (citing Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002)).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971);  Richard ex rel. Z.N.F., 480 F. App'x at 776; Stringer, 465 F. App'x at 363-64; Perez, 415 F.3d at 461.  This court may not reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision.  Halterman ex rel. Halterman v. Colvin, No. 12-31099, 2013 WL 5913945, at *2 (5th Cir. May 9, 2013) (citing Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000)); Stringer, 465 F. App'x at 364.  The Commissioner, rather than the courts, must resolve conflicts in the evidence. Luckey v. Astrue, 458 F. App'x 322, 324 (5th Cir. 2011) (citing Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990)); Newton, 209 F.3d at 452.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  Joubert v. Astrue, 287 F. App'x 380, 382 (5th Cir.

4

2008) (citing <u>Perez</u>, 415 F.3d at 461).  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  <u>Ray v. Barnhart</u>, 163 F. App'x 308, 311 (5th Cir. 2006) (citing <u>Perales</u>, 402 U.S. at 390); <u>Perez</u>, 415 F.3d at 461.

To be considered disabled and eligible for DIB, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2012).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[4]  <u>Id.</u> §§ 404.1520, 416.920;

---

[4]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  <u>Id.</u> §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  <u>Id.</u> §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  <u>Id.</u> §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant

Alexander v. Astrue, 412 F. App'x 719, 720 (5th Cir. 2011) (citing Audler v. Astrue, 501 F.3d 446, 447 (5th Cir. 2007)); Perez, 415 F.3d at 461. The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Id.

The claimant has the burden of proof under the first four parts of the inquiry. If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing. When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. Alexander, 412 F. App'x 720-21; Perez, 415 F.3d at 461.

The court weighs four elements of proof when determining whether there is substantial evidence of disability: "'(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.'" Chrisner v. Astrue, 249 F. App'x 354, 356 (5th Cir. 2007) (quoting Wren v. Sullivan, 925 F.2d 123, 126 (5th Cir. 1991)); accord Perez, 415 F.3d at 463.

---

cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

B.     Factual Background

Richardson testified that she is 49 years old and lives in a house in Slidell, Louisiana, with her husband, who is retired. (Tr. 36, 39). She stated that she graduated from high school, took a secretarial course at a vo-tech school and worked as a legal secretary until April 27, 2011. She said she has not worked since then. (Tr. 36).

Plaintiff stated that she cannot work because she has pain in her cervical area in the top, front and back of her shoulders. She said that the pain intensifies the more she moves her neck up, down, left or right and that pain also goes down her right arm. She testified that, when she stopped working, she had pain in both arms and tingling in both hands. She said she now has numbness in her right hand, index finger, thumb and right shoulder.

Richardson testified that she also has pain across her low back, in both buttocks and down her left leg to the arch of the foot and two toes. She said she has cramps in her calf and pain in her right leg from the buttock to the back of her knee. She stated that she now has pain from her right hip across her thigh to her knee since she had an epidural injection in her low back. She said that she can stand, walk, kneel, bend, push and carry to a certain extent, but only with a lot of pain. She testified that she tries not to do any of those things. (Tr. 37).

Plaintiff stated that she started treatment with a chiropractor, but that Dr. Thomas is the only medical doctor she has seen and he is recommending two surgeries. She said

she had researched doctors who treat these types of injuries, and she chose Dr. Thomas because he is very credible and one of the best in his field.  She testified that she is so confident in him that she pays him herself because he is not on her insurance plan.  She stated that he has recommended bilateral laminectomy and an ACDF (anterior cervical Discectomy and fusion).  (Tr. 38).

Richardson testified that, on a typical day, she gets dressed, sits in a recliner with a pillow behind her back so her head is not pushed forward, and watches television.  She said she breaks up the day by getting up for coffee and to check the mail.  She stated that having her legs elevated helps her lower back.  She said she makes sandwiches for lunch, signs any forms that she might have received in the mail and makes telephone calls.  (Tr. 39-40).  Plaintiff stated that she does not cook dinner.  She said she and her husband eat on paper plates, and she washes the silverware and cups.  She testified that she does light loads of laundry and cleans the bathroom when necessary, but that her husband does most of the other household chores.  She said that, when she does her chores, she has to take pain medication and is unable to move for a few days until the medicine helps her get back to a level where she can function.  (Tr. 40-41).  She said she drove to the hearing, which took about 50 minutes.

Plaintiff testified that she can sit for about 30 minutes before she has to stand and that she is uncomfortable if she sits for 40 minutes or more.  She said she did not take any medicine before coming to the hearing because she did not want to be under any

influence during the hearing.  She estimated that she could stand for about 15 minutes. She stated that she does not use any assistive device to walk, but uses a TENS (Transcutaneous Electrical Nerve Stimulation) unit, heating pads, recliner and medication.  (Tr. 42).  She thought she could walk for about one-quarter of a mile, or for five to ten minutes.

Richardson stated that lifting and carrying things causes problems in her upper and lower back.  She said she could carry one two-liter bottle of soda, but not two bottles or a gallon of milk.  She testified that she buys milk in one-half gallons and does not buy gallons.  (Tr. 43).  She stated that she had to switch from carrying a large purse to the smallest purse she could find because the weight of a large purse on her shoulder causes pain in her neck.  She is right-handed.  She said she had problems raising both of her arms above shoulder level when she was working, but now she only has that problem with her right arm.

Plaintiff testified that she takes her pain medication, which takes the edge off the pain and makes her "loopy," by which she means she feels tired and a little dizzy.  (Tr. 44-45).  She said she does not take it when she plans to drive.  (Tr. 45).

Richardson stated that she has not had the recommended surgery because she is worried about its associated risks.  She fears that surgery will make her worse and that she will have less function after it than she does now.  She is also concerned that surgery at one level will put more pressure on the other levels in her upper and lower back where

she has problems, and that she will then need another surgery through scar tissue, which has more associated complications.  (Tr. 45).

Plaintiff testified that sitting in her recliner with a heating pad daily and taking prescribed medication helps the pain.  (Tr. 45-46).  She said she usually sleeps with the heating pad at night and sometimes uses it during the day, depending on how bad she feels that day.  She stated that she has good days and bad days, but has pain every day. She said she has worse pain on days when she does a light load of laundry or something like that.  She testified that, if she did housework, she would have at least two bad days and that she only does laundry or other housework on days when she feels better, which occurs a couple of times per month.  (Tr. 46).  She stated that, on bad days, she just watches television and maybe washes the silverware.

Richardson said she used to belong to a few clubs, but does not anymore.  She testified that she occasionally goes out to dinner or a movie with her husband and that she puts her feet on the back of the chair in front of her at the theater.  (Tr. 47).

Plaintiff stated that, in addition to pain, she has cramping and drops things because she cannot hold on to them.  She said she has pain when she reaches above, looks up at people, bends over to look in files and carries boxes or files to the conference room.  She testified that her radiculopathy is mostly in the right arm and left leg.  She said she did not have problems with opening jars, buttoning clothes or turning doorknobs, but was dropping pencils, cups and file folders when she was at work.  She stated that she has

problems with typing, reading, writing or anything that requires her to move her head and arm.  (Tr. 48).

Richardson testified that Dr. Thomas told her that the MRI showed that there is pressure on her nerves, which sends pain down her leg.  She said he has not recommended EMG or nerve conduction studies, but wants her to have a current MRI before he performs surgery.  She stated that physical therapy caused more pain than it helped and that steroid injections helped with the pain for a little while, but now she has pain that she did not have before the injection on the right side of her lower back.  (Tr. 49-50).

Plaintiff said Dr. Thomas told her that her grip strength was normal, which surprised her because she feels that her right hand is weaker.  She stated that Dr. Thomas said it will feel weaker as the nerves get irritated.  She understood him to say that she would feel better if she did not do anything, so she strives to do that because doing things causes pain.  She testified that, if the only way not to be in pain is to do nothing or to have the recommended surgeries, she will try not to have surgery for as long as possible because she understood it is very probable that she will have more problems at other levels.  She said Dr. Thomas told her he could only do surgery at one level at a time.  (Tr. 50-51).

Richardson testified that she had to be sedated for the epidural injections because she was so scared about them nicking her spinal cord.  (Tr. 52).

11

Plaintiff stated that she sits in recliner with her legs up all day to reduce the pain and burning that goes down her leg. (Tr. 56-57). She testified that she was in pain sitting at the hearing after a 50-minute drive, but she did what she had to do that day. She stated that she could not do it day in and day out. She said she was limited not only in her neck rotation, but also in flexion and extension, such that looking up and down causes pain, as does reaching for something. She testified that she cannot read or shave under her arms because she cannot look down to do it. Richardson said she could not work because the attorneys would stand at her desk and she would have to look up at them. (Tr. 58). She stated that her neck is better in the morning and progressively worsens during the day, the more she moves her neck. She said Dr. Thomas wants her to have the surgery. (Tr. 60).

      C.    <u>Vocational Expert Testimony</u>

A vocational expert, Kasey Suggs, testified at the hearing that plaintiff's work as a legal secretary was a skilled, sedentary job. The ALJ posed a hypothetical of a person who can do sedentary work, stand/walk for two hours and sit for six hours in an eight-hour day, with occasional climbing of ramps and stairs, no climbing of ladders, frequent balancing, occasional kneeling, stooping, crouching and crawling, no overhead work bilaterally with the upper extremities and avoiding even moderate exposure to hazards. (Tr. 53). Suggs testified that such an individual could perform Richardson's past relevant work.

The ALJ modified the hypothetical to add a limitation that the person could only sit for 30 minutes at a time and then has to be allowed to reposition in her chair or stand for up to a minute at a time to relieve discomfort, and can stand for 15 minutes at a time before she has to be allowed to sit and can walk up to one-quarter mile. (Tr. 53-54). The vocational expert testified that such a person could perform plaintiff's past relevant work.

The ALJ added additional limitations of occasional rotation of the neck, but no problems with flexion or extension, and frequent gross manipulation with the right dominant extremity. He clarified that occasional rotation of the neck means she can turn her neck from side to side for up to one-third of the work day. She said these limitations would not preclude plaintiff's past relevant work.

Suggs stated that, if the gross manipulation ability was limited to occasional, the person could not perform Richardson's past work. (Tr. 54-55). She testified that a person with all of these limitations could perform the job of information clerk, which is sedentary and available in the Louisiana and national economies. (Tr. 55).

Upon questioning by plaintiff's attorney, the expert said that a person who had to miss three days of work per month due to pain and other problems would be subject to termination and would not be able to maintain full-time employment. She testified that a hypothetical individual who had to have her legs elevated at waist level whenever she was sitting would not be able to maintain full-time employment in these sedentary occupations. (Tr. 56).

13

D.   <u>Medical Evidence</u>

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence in his original and amended decisions.  (Tr. 19-23).  I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.   <u>Plaintiff's Appeal</u>

1.   The ALJ applied the appropriate legal standards in weighing the <u>opinions of plaintiff's treating neurosurgeon.</u>

The ALJ proceeded through the entire sequential evaluation and held at the fifth step that plaintiff is not disabled because she has the residual functional capacity to perform jobs that are available in the national economy.  Richardson argues that the ALJ failed to analyze the opinions of her treating neurosurgeon, Najeeb Thomas, M.D., based on the factors set forth in 20 C.F.R. § 404.1527, as required by <u>Newton v. Apfel</u>, 209 F.3d 448 (5th Cir. 2000).

Richardson was rear-ended in an automobile accident on September 8, 2010, and began having neck and back pain thereafter.  She first saw Dr. Thomas on April 26, 2011, the day before her alleged onset date of disability.  During the course of plaintiff's treatment, Dr. Thomas completed three forms entitled "Attending Physician Statements" on October 18, 2011, July 10, 2012, and January 30, 2013.  (Tr. 291-92, 300, 337).  On

the first two of these, Dr. Thomas checked a box indicating that Richardson has severe limitation of functional capacity and is incapable of sedentary work activity due to her diagnosed cervical and lumbar stenosis without myelopathy[5] with subjective symptoms of neck, arm, back and leg pain.  He checked the boxes indicating that she is now totally disabled from her current job and any other work, with a fundamental or marked change expected to occur within three to six months.  (Tr. 291, 300).  The October 2011 statement also included Dr. Thomas's note that plaintiff has "zero function at this time" with respect to lifting, carrying, sitting, standing, walking and other postural activities. (Tr. 292).

On the January 2013 Attending Physician Statements, Dr. Thomas checked both the box for severe limitation and the box above it for moderate limitation of functional capacity, capable of sedentary activity.  Without explanation, he drew what appears to be an arrow in the margin from the moderate box to the severe box.  On the same form, in response to the question whether plaintiff is now totally disabled, he stated:  "If patient decides on surgery or not.  If no surgery, a disability rating would need to be done."  He again checked the box indicating that a fundamental or marked change could be expected in three to six months.  (Tr. 337).  Dr. Thomas completed another form entitled "Restrictions and Limitations" on January 10, 2012.  (Tr. 286-88).  On this form, he

---

[5]Myelopathy is "any disease or disorder of the spinal cord or bone marrow."  MedlinePlus Medical Dictionary, http://www.merriam-webster.com/medlineplus/myelopathy (visited Apr. 30, 2015).

wrote that Richardson has no current level of work capacity and has been recommended to have cervical and lumbar surgery.  Next to the lines for how many hours plaintiff could sit, stand or walk in an eight-hour work day, whether continuously or alternating, Dr. Thomas wrote "zero–depends on level of comfort."  (Tr. 286).  He indicated that she can never do any of six other postural activities.  As to her right dominant hand, Dr. Thomas checked boxes indicating that Richardson can never reach overhead, outward or downward or perform handling, fingering, power grip, forearm rotation or keyboard use.  (Tr. 287-88).  He responded "depending on when surgery is scheduled" to the question when plaintiff might return to employment.  (Tr. 288).

Richardson contends that the ALJ improperly rejected these opinions of her treating neurosurgeon.  She acknowledges that a physician's statement that a patient is disabled does not mean that the patient is disabled for purposes of the Act, because that is a determination that may be made only by the Commissioner and because such statements are not medical opinions.  Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003); Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001); Tamez v. Sullivan, 888 F.2d 334, 336 n.1 (5th Cir. 1989).  However, she argues that Dr. Thomas's form statements contain specific functional restrictions that are medical opinions, which the ALJ was required to analyze based on the factors set forth in 20 C.F.R. § 404.1527, as required by Newton.

16

Plaintiff's argument that the ALJ must expressly consider the six factors in 20

C.F.R. § 404.1527 whenever the ALJ discounts a treating physician's opinion sweeps too

broadly.  Generally,

> [t]he opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability.  A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.  The opinion of a specialist generally is accorded greater weight than that of a non-specialist.
>
> Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status.  [T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.  The treating physician's opinions are not conclusive.  The opinions may be assigned little or no weight when good cause is shown.  Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

Newton, 209 F.3d at 455-56 (quotations and citations omitted).  The Fifth Circuit in

Newton "conclude[d] that, absent reliable medical evidence from a treating or examining

physician controverting the claimant's treating specialist, an ALJ may reject the opinion

of the treating physician only if the ALJ performs a detailed analysis of the treating

physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." Id. at 453

(emphasis added); see also Thibodeaux v. Astrue, 324 F. App'x 440, 445 (5th Cir. 2009)

(citing Newton, 209 F.3d at 453, 456) (When the record contained "reliable medical

evidence from a treating or examining physician controverting the claimant's treating specialist, . . . the ALJ was <u>not</u> required to apply the criteria set forth in 20 C.F.R. § 404.1527(d)(2).") (emphasis added).

The ALJ in this case stated that he considered the opinion evidence in accordance with 20 C.F.R. § 404.1527.  He thoroughly reviewed the medical records and accepted Dr. Thomas's diagnoses and opinions concerning plaintiff's symptoms to the extent that they were supported by the treatment records.  The ALJ discussed specifically why he declined to afford controlling weight and instead gave little weight to Dr. Thomas's conclusory opinions on the form statements.  (Tr. 23-24).  The ALJ gave significant weight to the opinions of Judith Vogelsang, D.O., who reviewed plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment on August 30, 2012.  (Tr. 301-07).  Dr. Vogelsang in turn resolved the conflicts between Dr. Thomas's opinions and those of the consultative examiner, John Engle, M.D.  Based on his physical examination of Richardson on June 15, 2012, Dr. Engle found that she had lesser symptoms, fewer objective findings and greater functional abilities than Dr. Thomas found.  (Tr. 260-63).

Thus, there is "reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist" in the record.  <u>Newton</u>, 209 F.3d at 453. In these circumstances, unlike those in <u>Newton</u>, the ALJ was not required to discuss

specifically the six factors in 20 C.F.R. § 404.1527.  Accordingly, this assignment of error lacks merit.

2.      The ALJ's residual functional capacity findings are supported by substantial evidence.

Richardson argues that the ALJ's error in failing properly to evaluate Dr. Thomas's opinions is not harmless because the neurosurgeon's opinions are reasonably supported by the medical evidence.  First, as discussed in the preceding section, the ALJ applied the appropriate legal standards in evaluating the medical evidence.  Thus, there was no error, harmless or otherwise.

Second, the correct standard of review is not whether Dr. Thomas's opinions are reasonably supported by the medical evidence, but whether there is substantial evidence in the record to support the Commissioner's final decision as trier of fact.  Richard ex rel. Z.N.F., 480 F. App'x at 776; Stringer, 465 F. App'x at 363.  The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.  This court may not reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision.  Halterman ex rel. Halterman v. Colvin, 544 F. App'x 358, 360 (5th Cir. 2013) (citing Newton, 209 F.3d at 452); Stringer, 465 F. App'x at 364.  The Commissioner, rather than the courts, must resolve conflicts

in the evidence. <u>Luckey v. Astrue</u>, 458 F. App'x 322, 324 (5th Cir. 2011) (citing <u>Selders v. Sullivan</u>, 914 F.2d 614, 617 (5th Cir. 1990)); <u>Newton</u>, 209 F.3d at 452.

As he is obligated to do, the ALJ in the instant case weighed conflicting medical evidence and resolved the conflict in favor of the opinions of Drs. Engle and Vogelsang. <u>Escalante v. Astrue</u>, 286 F. App'x 179, 180 (5th Cir. 2008) (citing <u>Griego v. Sullivan</u>, 940 F.2d 942, 945 (5th Cir. 1991); <u>Moore v. Sullivan</u>, 919 F.2d 901, 905 (5th Cir. 1990)). "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  <u>Newton</u>, 209 F.3d at 455 (quotation omitted); <u>see also</u> 20 C.F.R. § 404.1527(c)(2) ("If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all the other evidence and see whether we can decide whether you are disabled based on the evidence we have.").

The court has reviewed the medical evidence and finds that the ALJ discussed it thoroughly and accurately.  The court need not repeat that summary in these findings and recommendation.  The ALJ's decision shows that he carefully considered, but ultimately rejected, Dr. Thomas's conclusions that Richardson's ability to function was severely limited to no useful ability to function in all work-related activities.  The ALJ evaluated numerous factors, including plaintiff's testimony, her activities of daily living, narrative notes of her treatment history, objective tests and findings, medications that she took, Dr. Thomas's recommendation for surgery, plaintiff's decision not to have the surgery and

20

the opinions of consultative examiner Dr. Engle and reviewing physician Dr. Vogelsang. Although he gave significant weight to Dr. Vogelsang's opinions, the ALJ actually incorporated more limitations in his residual functional capacity assessment than she had done, based on portions of Richardson's testimony that the ALJ found credible and on Dr. Engle's examination findings.

"[T]he Act empowers the ALJ to analyze the physicians' testimony. Substantial evidence supports the ALJ's decision to disregard the physicians' conclusions. That basis is enough to survive our review." Greenspan, 38 F.3d at 237.

Substantial evidence supports the ALJ's residual functional capacity assessment. Accordingly, this assignment of error lacks merit.

## CONCLUSION

The ALJ applied the appropriate legal standards in weighing the opinions of plaintiff's treating neurosurgeon. Substantial evidence supports the ALJ's residual functional capacity findings.

## **RECOMMENDATION**

Accordingly, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of

plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[6]

New Orleans, Louisiana, this ___1st___ day of May, 2015.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[6]Douglass referred to the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

22